Mr. Swenson, whenever you're ready. Yes, Your Honor. May it please the court, never in the past two millennia has a human being taken a trip with a briefcase full of physical card catalog cards and been capable of making a card transubstantiate remotely into a physical copy of a book that replaces it in a briefcase. Like the notion of instant transportation from a brick and mortar store and DDR holdings, that possibility simply never existed in the fire art at the time of this invention. The claimed invention here arose in the early 1990s in an entirely new and different technological paradigm than a library card catalog or the card cataloging in general that appellees focus on. And contrary to page 32 of an appellee's brief, physical and electronic documents in their handling are not technologically the same, which is what they've argued here. The claims of these patents, 321 and 997 patents, are not directed to the idea of cataloging documents. They're directed to a system capable of actually exchanging electronic documents and references wirelessly between distinct memories in different devices. Nor do they merely instruct one to apply generic computers to cataloging documents. But the system is capable of cataloging the documents and putting them in such a way so they can quickly be retrieved, right? Well, that's correct, Your Honor. And, in fact, if anything, really, that's an element of one side of the system on a back-end database. I mean, obviously, there is some cataloging of documents that has occurred. You know, for example, if you're looking at appellee's systems for Amazon Bookstore, Barnes & Noble, those documents have been cataloged, which illustrates that that's not what we claimed. No, this is what we're trying to do is to decide whether or not what you claim embraces an abstract idea. And you have DDR as the only data point out there for you to hang your hat on so far post-Alice. I was looking at contact extraction against Wells Fargo Bank, and the claim there was collecting data, recognizing certain data within the collected data set, storing that recognized data in a memory. And it could have included the step retrieving the data. If it included the step of retrieving the data, it would look to me very much like what your claims do. Well, that's – contact extraction is one of – I mean, first of all, if you go back on all these cases, looking at the Supreme Court line of precedent through Alice, what those were really concerned with was method claims and whether or not they were – Well, I know your lead argument here is, oh, my goodness, this is an apparatus. That's correct. That's your lead argument in your brief, and I've got to be honest with you. I just drew a line through all that and said Alice says no, move on. Alice makes perfectly clear that the fact that you have chosen to write your claims in an apparatus form doesn't cut any mustard. Well, Your Honor, I disagree with that respectfully with what Alice says in that regard. Let's assume for purposes of argument that I'm right. Alice says that. Then what I'm trying to get at is to move you past that point. We can decide that point, right, whether or not the fact that you're in an apparatus saves you from abstraction. Sure. I can decide that without talking to you any further. I can go back in my chambers and think about it. But for me to try to do the hard work of deciding whether or not the steps in your claim taken apart, treating them as though they were method, whether those steps in the claim, whether there's any clear daylight between them and, for example, contract extraction. Well, I think the difference with contract – content extraction in particular is that right there you had only two pieces of equipment. You had what was admitted to be a general purpose computer and you had what was admitted to be an input device or a scanner that was admitted to be conventional at the time. And one of the things that this court said in its opinion is that counsel acknowledged in the argument that the scanner was also generic and conventional. So there you've only combined – if we're talking about it as a method, Your Honor, you've combined two things that are both acknowledged to be conventional as part of performing that method. Here, this is a combination claim that has a lot more to it. And actually, by the way, these claims are distinct claims. There are claims to the device itself. There are claims to the overall system. So the point that – to respond to your question, Judge Klobuchar, is that this goes far beyond content extraction in the caliber of what – Well, I mean your adversary says the things that you talk about that take this outside that are unusual aren't claimed. There are things you talk about in your spec that they're not part of the claim, the URLs and the rest, the stuff that may have been novel at the time, but it's not claimed. That's an argument that's directed to a few specific elements within the claim. The point is that it still is a combination claim and there's more to it than content extraction. There's more than just a generic – Right, but why doesn't that go to whether or not you somehow managed to morph an abstract notion into something that's patentable? Well, there has to be something that isn't abstract or an abstract idea. I mean I understand that you're asking me to put this – I mean we could also have this debate on another level like what's an abstract idea, but you've got to understand that I'm starting from – I'm trying the best I can to apply the law handed down to me by my masters up on Capitol Hill at Spring Court. So they tell me that hedging is an abstract idea, right? I have trouble with the fact that hedging is an abstract idea, but it is. And so I say, well, collecting, restoring, retrieving, this is what CME, your claim, is all about. Well, that's – And the fact that it's being done electronically, yes, that is a limitation. You're not just talking about collecting. So all of the physical card catalogs out there in the world probably aren't going to follow any of your claims. But anybody who walks along the street with their iPhone and downloads some content from a server over here somewhere is going to be infringing your claims. That's not necessarily true, Your Honor. Well, it's close to it. No, and by the way, I mean, for what it's worth, a lot of devices that are out there are already licensed under this patent. No, I don't care about that. I mean, that means somebody took a license. But the point is that from the point of view of a preemption point of view, you're going to preempt all electronic forms of and then just add verbs and put ING on them. Well, that's not true, Your Honor. In terms of storing, collecting, and retrieving. Well, but even in a method claim, there is an aspect of a combination of the steps. And whether that combination is simply a, you know, reflects an algorithm or a mathematical calculation, I mean, that's what the Supreme Court precedent stands for through Parker. So I mean, our first problem here is whether or not we do indeed have an opinion from an experienced district court judge that from your perspective kind of was pretty thin about trying to explain why this is an abstract idea. But that's a legal question, and we can fill in the blanks if we need to in that rationale. But you first got to convince me that this is not an abstract idea. If you can't convince me of that, then you've got to convince me that what's happening in the claims is, in your words, DDR type stuff. And I don't see that. I don't see that your claims are telling a computer to do something that it refuses to do. Well, Your Honor, it's, again, it's the combination of functionality. So, yes, people have known how to store. People have known how to receive. People have known how to transmit. There are aspects of this that are even acknowledged in the specification as things that were understood. I mean, it refers to a conventional network as one component, meaning Ethernet. And in the old physical library sense, one knew how to go to the library and get the card catalog and get the library and run upstairs and get the book. But the point is you couldn't have the functionality to exchange a physical document between two spaces the way that you do with this. So, it's the combining of steps that you have a memory and a portable device, which is required by the claim to be the portable transport device. And you have a much larger memory that holds a substantial amount of books. Accomplishing all of that is simply a matter of programming a general-purpose computer. Well, that's – okay. There are aspects of what's done here that involve programming a computer that may be a general-purpose computer as one of the elements of the combination. Certainly no new computer is being claimed. Well, that's not true because the portable electronic transport device – I mean, remember, one of the key aspects of this – and now we're crossing over very much into essentially an obviousness argument. And the problem with that is that we end up doing an obviousness argument on a record without the grandeur factors. We haven't established the scope and content of the art, et cetera. But the document transport device, the whole thing that presupposed this invention in 1994 – and actually, that's when the first filing was. So we're really talking about 1992, 1983 – was that we weren't walking around beaming things with our cell phones in 1993. So, yes, there actually are components of this that are new. But there were devices that were capable of doing that if they knew what to do. That's not something – I mean, there – Up until that – has there been any determination that up until 1994 that people were in fact doing that? That would go to novelty and obviousness, but I don't – We never got to that point. I'm sorry to interrupt you, Your Honor. This case never got to that point. And that goes to what I'm saying to Judge Clevenger is that we're doing this on an early summary judgment, which was accelerated to be heard at the Markman hearing. And so there was only very limited discovery, which didn't cover – I remember 1994 pretty darn well. So you're at graduate law school, in fact. And I don't even remember laptops for the most part existing at that point, much less cell phones that you could use for data in that manner. Certainly those didn't exist. I think I had a Motorola flip phone at the time. The most it was capable of was occasionally getting through the right phone number. So it's kind of easy now, isn't it, in 2015 to look backwards and say, come on. Well, and Your Honor, again, that's my concern I expressed to Judge Clevenger is that what we're really doing here is we're – and this is a major problem with the judge's opinion below is that the judge talked about what's conventional from the perspective it appears of today and saying, I can look at this, this, and this. Well, she did cite to the specification. I mean she had some cites pulled out of the specification and all your references to your computer and what technology you were using. So she was using your – In places, Your Honor. With all respect, SPEC uses the word conventional six times I counted it. The things it says are conventional, JA 49, column 7, line 7. It says a mouse and a pointer are conventional. No, but she also referenced the citation to any suitable portable computer, any suitable format. Well, that goes to my discussion with Judge Moore, Your Honor, which is that we have to go back to 1994, and we weren't walking – we were walking around with flip phones. We weren't walking around with this that has my entire office on it or three movies and several books. So when we go back to 1994, it's a different analysis, and we can't use hindsight from what we think today is conventional, especially we end up preempting, as I said, the obviousness analysis. So this guy didn't invent portable electronics. This guy didn't invent large-scale memory in a stationary device, and he didn't invent the concept of retrieving or communicating. You've already said all of that. So what is it this guy invented? I mean, give me the kernel of the notion of his invention. Sure, Your Honor. So – and to part of what you said, some of these things like the Park tablet or the Park tab were being simultaneously developed at Xerox as part of an overall project of an office automation system. So what these people – these two inventors, Lanning and Flynn, were part of this team who were focusing, and they came up with this idea of using the different-sized document token of reference and interchanging that with a full-size electronic document. Software. The answer to my question is software. Well – They invented a software method. I mean, I know that right now people think software is a dirty word under 101. I'm not one of them, so don't take it that way. Sure. Software. They came up with a document sub-handling system routine, which implemented through software, allowed for all of these potentially novel, not obvious communications access to take place, right? Is that the kernel of their invention? No, I respectfully disagree with that, Judge Moore. I think that it's much more than software. You have to look at the elements of taking – also simultaneously being developed, the URL was standardized at W3 Consortium in 1993 and 1994. That's not what's claimed. It is, actually, in some part. If you look at the 997 patent, one of those dependent claims talks about a document reference. This is JA72. I believe it's claim four. The system according to claim one wherein each electronic document reference specifies a host file server and location, etc. And that corresponds to the disclosure of the URL and the specification in column five on JA48, including the portions of a URL that directs you to a file on a host server. So, yes, they are combining more than just writing a software routine. They are putting together these elements of this part tab idea, this portable computer, a backend database, the reference or token, and then the transceivers that allow this to remotely exchange these documents, which results in the innovative development of being able to interchange documents in your portable memory so that I can walk around with this and I can have 100 books on here even though I only have now eight gigs and it still fills up. But I can click on something that hasn't been downloaded yet that I have a reference for and all of a sudden, bam, it's in my tablet or my e-reader or something else. And the other thing is that we can't hold against these inventors. I mean, if I was the first person to come up with a concept of a human-powered two-wheeled vehicle with aligned wheels and pedals, if I was really the first person who came up with that, I'd get to claim all bicycles. You can't say you're limited to the blue bike or the bike with the pink basket. These people in 1994, this combination was something that hadn't been done before and it was a capability that has nothing to do with card catalogs in a library. It has to do with innovating on the efficiency of memory. Okay, so you think claim four maybe extends to URL. I'm not sure if it's specific enough to convince me that that's what it does extend to. Claim one, which is the broader independent claim, what is the invention here? I mean, it seems to me the invention is the software that allows the coupling and the communication, isn't it? I mean, what else is in claim one? I disagree, Your Honor. It's not the software that's not – What's wrong with it? So what? Suppose I think it is the software. It doesn't mean you lose. I mean, you're bucking me as though you're going to lose. I understand. Okay, so assume I think it's only the software. Start from that. You don't. I agree. But assume I do. I mean, how does this case differ from DDR under those circumstances? This is a software system for improving, basically expanding the memory of a computer by allowing you access beyond what you're capable of containing on the memory of your computer. I mean, this doesn't feel very business method-y. This doesn't feel very internet-y. This feels like something that goes to the heart of improving the technology itself. Sure. So – I agree with everything you just said. Absolutely. I'm not bucking you on that. My only point – and I think I said to Judge Clevenger's question that, yes, it includes software. The only thing I'm bucking in your question is that the invention that these people came up with wasn't limited to a software routine. It was the combination of all these things, including that there is software that makes this – Yeah, but each of the things is old. I don't see any – a combination of things, a combination of pieces of hardware. But each of those pieces of hardware are admittedly, by the specification, old. None of them were hardware that were invented, at least for Claim 1 purposes, which is quite broad. Nothing disclosed in it, it seems to me, is hardware specific to this invention as opposed to hardware programmed to act a specific way for this invention. Well, and so – and we're talking about J72, just to be clear, or 997, Claim 1, I believe. 997, Claim 1. And again, now there, one of the problems, not only did we not get to the obviousness stage, but the judge decided to issue the one-on-one order even though we had a full Markman hearing without issuing a claim construction order. Answer my question, though. If you're disagreeing with my characterization of what really this claim is about, why? Don't tell me what the judge did or didn't do. Tell me now why. What argument do you have that there is some piece of hardware in Claim 1 which is really a novel piece of hardware pursuant to the invention? Right, and what I'm getting at is it starts out by identifying the portable electronic document reference transport device, which what I'm saying is the specification acknowledges that at that time there was a park tab that was being developed and had been disclosed, but it was not a well-known conventional thing that existed in the field. This was new. So I respectfully believe that there are elements of it. You think the transport device itself is a new structure, a novel structure? Yes. Like a new computer, a new fax, a new iPhone, a new whatever? It's exactly what you said, Your Honor. You had a flip phone in 1994, and this is not a flip phone. Your flip phone could not do this in 1994. So we're talking about something new and different. But doesn't the spec say any portable device is suitable? Well, it goes on to elaborate, and it incorporates by reference the articles about the park tab, for example, and I had that marked on the 321 specification. I think that was JA 47 again in column 3. So it goes on to explain, and again, it's the problem that these were early innovators. So, yes, they've claimed broadly, and they were allowed, and I want to point out that in the prior art, in the PTO, there were a couple things before the PTO that clearly distinguished what was going on here. At JA 73, there's a discussion of the SCAPA, S-C-A-P-A reference, which was a portable device which could only scan business cards and exchange the full business card with another memory. So that was part of the backdrop of the prior art. Another one, and I have to point out this was actually mischaracterized in a Pell-East brief at page 35, there was a petroleum abstract search system that used a computer, and it specifically says, contrary to their brief, that it was on a Xerox Sigma-6 computer to index, computer index, abstracts of articles about petroleum and the petroleum industry. Okay, you need to wrap it up a little. We're way beyond you. I'm sorry. I was just trying to answer your question. No, and I appreciate that. I didn't want to cut you off too soon. Can I just make one point? Sure. Mr. Swenson, here at the argument today, as in your responsive brief at page 15 to 18, you're backing away from treating Claim 1 of the 321 as representative. Absolutely. I didn't see anything in front of the district court. The district court took Claim 1 as representative. I didn't see any filing in the district court that argued au contraire. I didn't see anything in your blue brief. I believe that we—well, I'll look at the blue brief when I come back, but we argued that they were different. We cited different claims, including some of the dependent claims. We argued in the Markman hearing and the motion there, different claims. So I absolutely disagree with that. I think they're—for example, talking about Claim 4 of the 997 patent with Judge Moore, clearly there are distinctions in these claims, including the dependent claims. I'm not saying that there aren't distinctions in the claim. I'm saying for purposes of this litigation, I understood Claim 1 to be treated as representative of all the claims. Absolutely not. That has never been our position. We've never conceded that, and I do not agree with that. Okay, why don't we hear from the other side, and I'll speak for a couple minutes if we'd rather. Before we get started, do you disagree with Claim 1 being representative? Judge Clevenger, I agree with you that before the reply brief in this case, Cloud Satchel never suggested that there were any differences between the claims that were relevant to the 101 analysis. Let's look at Claim 23. Let's go to Page 23 of the blue brief. You say it didn't happen before the reply brief. Page 23 of the blue brief. Notably, Claim 15 and 17 of the 321 claim this. This is classically a concrete thing that can be held in one's hands. They seem to, in the blue brief, be distinguishing Claim 15 and 17. I don't know whether Judge Clevenger is right about before the district court or not or what you're going to say about that, but in the blue brief, I haven't gone back and looked meticulously through the blue brief, but the first one that popped into my mind was this one. They clearly are distinguishing Claim 15 and 17. Let me catch up with you in the brief. Right. So there's a description of both claims here of the 15 and Claim 17 of the 321 patent. My point is that in the blue brief, Cloud Satchel here never explained why there was any meaningful difference between those claims for Section 101 purposes, and there's no word of that here in the blue brief. They talk about how the portable electronic document referencing transport device is a concrete thing consisting of parts that can be held in one's hand. I don't know. They're trying to call out that element of those claims and point out that it's different. So don't you think it's not fair to say until the gray brief they never separately argued any claims or their elements? I suppose we can disagree about that, but my point here is the argument that they're making about Claims 15 and 17 is the exact same argument that they make about Claim 1. It's the argument that Judge Clevenger referred to, that all of these claims refer to devices, and therefore, according to Cloud Satchel, they don't claim abstract ideas. And that argument that they're making at this portion of the brief has been rejected by Allison as well. Before the district court, Cloud Satchel, if you refer back to their district court brief, Cloud Satchel itself referred to Claim 1 of the 321 patent and never differentiated between any of the other claims meaningfully, and there's no meaningful difference here among the claims, whether it's the claims of the 321 patent or Claim 1 of the 997 patent. Each of them are drawn on their face to the idea of associating documents  and then using the document reference to retrieve the document. That's an abstract idea, and it's the same idea that underlies any library cataloging system. Now, Cloud Satchel has said in its reply brief, and it repeated again today this idea that the claims are not abstract because once you add computers and computer networks, there's the ability to retrieve documents remotely from a great distance and to do so quickly. Well, the Supreme Court has cautioned us that everything could be reduced to an abstract idea. You can't tell me a claim that I couldn't find some way to characterize as an abstract idea. Certainly every method claim, by virtue of being a series of steps, is an algorithm. That's the definition of algorithm, which, of course, is an abstract idea. So it's easy to sort of say abstract idea, but why is this an abstract idea? It's the idea that having an electronic system that has insufficient memory, a portable one, and using a software package of their creation to come up with the means for giving it access to orders of magnitude more data than it would otherwise be capable of. It sounds like an invention to me. It sounds like something really cool in 1994. It's an abstract idea because these claims are disembodied from any particular way of accomplishing that result. All they claim is the result of using document references to retrieve documents that are stored elsewhere. And this case is just like the Internet patents case. You say it's divorced from anything, and it's just really broad, but the claims are to a system, and the system includes a distributed document handling subsystem. Yes, and the patent is explicit that the distributed document handling subsystem is simply a collection of conventional office equipment connected by a conventional network. Those are the words of the patent themselves. We cite those portions of the specification in our brief. What's more, not only are the patents explicit, but the document handling subsystem is just a conventional set of devices. Where does it say that, the document sub-handling system? It says at column 8, line 1 through 5. I'm sorry, column 8? 8, line 1 through 5 of the 321 patent. That's at JA 49. Okay. Within system 10, a conventional network enables communication between a number of conventional office devices coupled to a network such as workstations. Where does that, I mean, look? So if you look at that description there, and then you refer to figure 1? This is not a description of figure 1, by the way. It's a description of figure 4. It says so expressly. True, but figure 4 doesn't show the devices themselves. Figure 1 does. Figure 4 shows devices on the bottom. Penguin, XYB, Picadar. Yeah, figure 4 is a figure to describe sort of the process that would be used. And that's what this is describing. Okay, so let me point you to another section of the specification first, which is column 3, line 67 on JA 47. Column 3. It's at the very bottom of column 3. Document handling subsystem 18 includes many typical types of office equipment, personal computer 21, also called workstation 21, printer 36, multifunction fax machine 38, optical character recognition unit 40, infrared transceiver 41, and network 42. Those are all being described as typical in columns 3 to 4, and then in column 8. Your body includes arms and legs. Have I just described all the features and functions and parts of your body? You have not, but the problem with these times is they don't disclose anything more than what is expressly defined to be typical. Don't they disclose an algorithm for enabling the communication that's going to take place? They do not. Nowhere do they, and CloudStatual hasn't identified one. They disclose towards the end of the patent, they disclose a particular embodiment involving type software, but that embodiment is not what's claimed, and CloudStatual doesn't say it is. So I just want to emphasize that between— So would this case come out differently if they had, in fact, disclosed by line their actual code for a document subhandling system that was now capable because never before had there existed, assuming this is true, which we have no idea on this record, but assuming never before had there existed the capability at all of retrieving large documents from a portable electronic device. Suppose that had never existed before, and they created a software package that made that happen, that effectively expanded the memory of the portable software device in a way that had never been done before and had never even been capable of being done, and suppose there were all kinds of articles that said how great it would be if you could do this, but nobody could figure out how to do it. So suppose they wrote a software package that did that, and they actually included the code here in this patent. Would that be enough? I think if all the software and the code described was the idea of associating documents with document references and then using those document references to retrieve documents that have been stored elsewhere, the answer is no because all the software code there has described is essentially the idea of associating documents with document references itself, and that's an abstract idea. Even if it's useful, even if it's new, even if it's a great discovery, the precedence of this paper... How do you distinguish DDR? DDR involved an abstract idea, but what was critical in that case was that the invention at issue went to improving the functioning of the computer itself, and the Supreme Court expressly said that in one of its opinions, which is where DDR got the idea for it. This case is not like DDR. This is like the Internet Patents case that postdated DDR. In the Internet Patents case, same situation, the technology supposedly solved... But why isn't this like DDR? Let me refer first to the Internet Patents case and differentiate that from the DDR case, if you don't mind. Well, good luck, because, you know, why don't you start with Ultramarginal and tell me how DDR is different from that? I mean, it just seems like this case falls squarely within the DDR list. I can start with DDR, then. So one reason this case is not like DDR is... Excuse me. For a reason that the court has since articulated in the Intellectual Ventures case. DDR has no applicability where the claims are not directed to an Internet-specific problem and an Internet-specific solution. First, the claims here are not limited to the Internet, as opposed to other networks. Second, the problem that's being described in the claims and that the applicants purported to solve is not an Internet-specific problem or solution. The problem is limited portable storage capacity. CloudSatchel itself has acknowledged that that's the problem that the patents were purporting to solve. CloudSatchel says the problem is that storage needs were in excess of storage capacity. And the problem of limited portable storage capacity is one that has existed for centuries. Because as a human, I can't carry all the books that a shelf can hold. Just like in the background of the invention section of the patent, the applicant said it's impossible for the mobile worker and practical for the mobile worker to carry with him all of the paper documents he has. The solution to that old problem that has been used for centuries is using document references. So your only distinction from DDR is Internet? That's not my only distinction. Is that the only one, that this isn't the Internet? This doesn't involve the Internet exclusively or clearly exclusively? So those are two different distinctions. One, it's not specific to the Internet. Two, it's describing... So you believe DDR is limited 100%? There are no exceptions for abstract ideas but for ones that relate to the Internet. Boy, wouldn't that be a very strange whole. That's not what I was suggesting. What I was suggesting is... What was your second ground? You said one is it isn't related to the Internet and secondly... So first of all, I just want to distinguish what I'm seeing as one and two. One is things may be related to computers but not related to the Internet. I would say these patents here relate to computers. So if you improve the Internet, functioning of something on the Internet, that's okay. But if you're improving the functioning of computers themselves, not okay? All I'm saying is this court has recognized that the DDR case has no applicability when we're not talking about solutions, problems that are specific to the Internet and solutions that are specific to the Internet. These patents do not... When did we say that? In the Intellectual Ventures case. The court said DDR has no applicability here because these are not Internet-specific problems. Now, my other basis for distinguishing this case from DDR is that in DDR, at step two, the court determined that the claims recited something unconventional, an unconventional use of the Internet and told the public how to use computers and the Internet in a way that they hadn't been using before, hadn't been used before. Here, by the express terms of the patent, all of the devices are defined to be conventional or typical and I just wanted to refer to... But aren't they using them in a way that's never been done before, just like DDR? The only arguable way in which they're not, according to the applicants, is just a manifestation of the idea itself of sending documents and document references separately from one another. But that's the same idea as any other system. And in the Internet patents case, this court held when all the claims to do is describe a result and don't tell you what way you should use to implement that result, the claims are invalid under 101. And that's what the claims here do. They are indifferent about the portable device that's being used. The specification expressly says that the portable device can be any suitable computer. The claims are absolutely agnostic about how that computer is programmed. They're agnostic about how the document handling subsystem is programmed. They say nothing about it. The claims are agnostic about what transceiver is used, about what electronic document reference is used. I want to refer quickly to counsel's suggestion  that the way a URL is described at column 4 of the 321 patent is that it's a way for the World Wide Web to specify where a particular resource is located at the Internet while at the same time describing the tool that is required to access it and specifying the actual file's location on the Internet post. There's nothing in claim 4 that describes this part of describing the tool that's required to access it. If the claim is limited to a portable electronic document reference transport device, do you think that's any portable electronic device? I understand the claims that it could work with any portable electronic device, but is it possible a portable electronic document transport device is a particular kind of portable device? Well, the claim certainly doesn't say that it is. The spec tells us that it can be any form of portable computer. What Cloud Satchel argued below is that it's any device that's capable of storing an electronic document reference. We, based on a prosecution disclaimer argument of Cloud Satchel, suggested that the device isn't one that stores complete documents but only stores references. But no matter how you come out on that question, ultimately the device is just a general purpose computer as it's described by the claims. It just has a processor. I mean, I'm sorry, as it's described by the specification. It just has a processor. The spec is clear that the portable device functions in the same way as any other portable computer. And there's nothing in the spec that limits the portable device or the claims, for that matter, to any particular kind of programming. That's the argument that we get into under Section 112. I see I'm over my time, but I don't know. Yeah. I mean, if you need a few more minutes, only because we were up for the other side. I would like to take a few more minutes just to address a few small points. Okay. We were up five over, so take a couple more minutes. I want to get back quickly to the idea that Council raised of the ability to use these portable devices from across the world. The claims do not require any remoteness between the portable device and the device that stores the complete documents. CloudSatchel itself made that argument at page 31 of its opening brief. The portable device could be in the very same room as the device that stores the complete documents. But even if the claims did require that kind of remoteness, all that CloudSatchel is getting to is that it's possible with computers to achieve a retrieval function more quickly than it would otherwise be if you had to send a messenger from one part of the world back to some other part of the world, to the library, to get the document and to deliver it back. This court has said in the OIP case recently, the Intellectual Ventures case, the Bancorp case, that using computers to speed up a result and make it more efficient is not something that transforms an abstraction into something concrete. Judge Klovenger, I agree with you that this case is similar to content extraction and other cases that describe general abstract principles related to organizing data. And there's nothing at all in the claims that is inventive, supposedly inventive, other than this idea of using a document reference itself. The idea of using a document reference is what the inventors told the examiner was their invention. They said that at J372 to 373 in distinguished prior art on that basis. That may have been a useful solution. It may have solved a problem with differential memory capacities between these two portable devices. But the Supreme Court has been explicit in Flook and in later cases that even if that discloses something useful, the question is not usefulness. The question is, do the claims recite something significantly more than an idea? And here the only invention is this idea of using document references separately from the documents themselves. Judge Klovenger. No, I think we have your argument. Thank you very much. We respectfully request that the judgment be affirmed. A couple of very quick points I just want to make. In response to the discussion of DDR, let me read the first sentence of the background section of the Intellectual Ventures case that counsel says doesn't relate to the Internet. It says, Intellectual Ventures owns the three patents at issue, the first two of which generally relate to activities on the Internet. So the issue there was that this method claim, even relating to the Internet, didn't have enough to not be a follow of Alice. The same thing was true of the Internet patents case. That related to an Internet backward and forward button in a browser and whether it retained the state information of the page you had previously been on. So I just want to make clear that the idea that DDR was limited to the Internet and that was the basis of these two decisions is completely false. It was other aspects of the analysis that led to the results in these two cases, which of course were invalid because they were method claims that for other reasons were flawed. I also want to point out in the spec that at JA51, column 11, the very last two lines it talks about the portable electronic device being physically separate from the document handling subsystem. Also in the 997 patents claim, one of that patent talks about wireless links. So I agree there isn't a degree of remoteness that says you have to be on the other side of the world, but the point is this is clearly set up to be a portable and remote system. And for all those reasons and the combination of factors here, unless the court has any additional questions, we ask that the decision be reversed. And by the way, on either, of course, Step 1 or Step 2 of ALICE, if either of those you disagree with at this court, then we have to go back for further proceedings. Thank you. We thank both counsel and the case's submitter. That concludes our proceedings for this morning. All rise.